IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FILED
U.S. DISTRICT COURT
INDIANAPOLIS DIVISION
2013 MAY 24  AM 8: 33
SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

| | |
|---|---|
| SCOTTY MERRYMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO.: |
| ) | |
| SARAH FISHER / HARTMAN RACING ) | 1 : 13 -cv- 0 8 4 9 TWP -DKL |
| LLC, ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Comes now Plaintiff Scotty Merryman, by counsel, and for his Complaint and Demand for Jury Trial against Defendant Sarah Fisher / Hartman Racing LLC, states as follows:

### Introduction

1.   This is an action brought by Plaintiff Scotty Merryman against Defendant Sarah Fisher / Hartman Racing LLC ("SFHR") for sex discrimination, religion discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), as well as state law claims for battery, intentional infliction of emotional distress, and wrongful discharge. SFHR employed Merryman as a mechanic from January 17, 2011, to his unlawful termination on July 11, 2012. During this time Merryman's work met or exceeded SFHR's legitimate expectations. Merryman's work with other IndyCar series racing crews dates back to January 1997, and during that time he experienced all the challenges that a racing garage has to offer—high-pressure environment, long hours, and frayed emotions. As a result, Merryman learned very early in his career that yelling, foul language, and

1

hard-riding supervisors were the norm. Nothing, however, could have prepared him for Anton Julian, whose abusive conduct went far beyond acceptable workplace standards. Julian is SFHR's Crew Chief and was Merryman's immediate supervisor. Within the first week of his employment with SFHR, Merryman endured constant sex- and religious-based harassment from Julian. Merryman did the best he could to put up with Julian in part because he did not think there was recourse. As far as Merryman could tell, SFHR's ownership and management held Julian in high regard, and SFHR never made Merryman aware of any written policies pertaining to non-discrimination, harassment, or the reporting of the same. In what was his most heinous incident of harassment, Julian unzipped his pants and tapped the back of Merryman's head with his penis. Having long exceeded the breaking point with Julian's beyond-the-pale conduct, Julian's physical assault prompted Merryman to complain to SFHR's management. SFHR's response was counterproductive and consisted of Julian discussing the situation directly with Merryman, which solved nothing and led to Julian suggesting that Merryman was being oversensitive. Julian's harassment continued and, several months later, SFHR terminated Merryman's employment. In a remarkable display of euphemism, General Manager Andy O'Gara told Merryman that he was being terminated because of "chemistry between you and Anton."

## Parties

2.  Merryman is a United States citizen who resided within the geographic boundaries of the Southern District of Indiana at all times relevant to this action.

3.  SFHR is an Indiana Limited Liability Company located in Marion County, Indiana, which is within the Southern District of Indiana. SFHR is located at 4701 Rockville Road, Suite A, Indianapolis, Indiana 46222.

4. At all times relevant to this action Merryman was an "employee" as defined by 42 U.S.C. § 2000e(f).

5. At all times relevant to this action SFHR was an "employer" as defined by 42 U.S.C. § 2000e(b).

## Jurisdiction and Venue

6. This Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1331, because this action arises under federal law, and the Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

7. Merryman satisfied his obligations to exhaust administrative remedies, having timely filed a Charge of Discrimination, Charge No. 470-2013-0263, with the Equal Employment Opportunity Commission ("EEOC"), alleging, *inter alia,* sex discrimination, religious discrimination, and retaliation. A true and accurate copy of Merryman's Charge of Discrimination is attached at Exhibit A.

8. On May 21, 2013, the EEOC issued its Notice of Right to Sue to Merryman, who files this Complaint within ninety (90) days of receipt of that notice. A true and accurate copy of the EEOC's Notice of Right to Sue is attached at Exhibit B.

9. Venue is proper in this Court because SFHR resides in the Southern District of Indiana and a substantial part of the events giving rise to this lawsuit occurred within the Southern District of Indiana.

## Factual Allegations

10. Merryman was hired by SFHR on January 17, 2011 as a Mechanic.

11. Merryman is male and a Christian, and SFHR was aware of Merryman's protected status under both categories.

12. At all times during his employment, Merryman met or exceeded SFHR's legitimate performance expectations.

13. Within Merryman's first week of work, he endured sex- and religion-based harassment from his immediate supervisor, Crew Chief Anton Julian.

14. In one incident during the first week of work, Julian explained he had heard about Merryman's Facebook page and questioned why he quoted so many Bible verses.

15. Around the same time, Julian asked Merryman, "When was the last time you've been laid?" Taken aback, Merryman explained that was none of Julian's business, but Julian persisted. Thereafter, Julian volunteered to delivery persons, vendors, and almost anyone else who happened to visit the garage that "Scotty hasn't been laid in months."

16. Several months later, upon learning that Merryman had been dating a woman he met at his church, Julian repeatedly told Merryman, "You like to prey on the weak."

17. Merryman did not report these incidents to SFHR's management because, as far as he could tell, SFHR's management held Julian in high regard. In addition, SFHR never made Merryman aware of any written policies pertaining to non-discrimination, harassment, or the reporting of the same. Upon information and belief, SFHR did not have *any* policy pertaining to non-discrimination or harassment during Merryman's employment, nor did it post a notice informing employees of their rights under federal antidiscrimination laws as required by 42 U.S.C. § 2000e-10.

18. As the months progressed, Julian's conduct became more outrageous. For SFHR's March 2012 "test" in Birmingham, Alabama (March 12 to 14, 2012), which is

4

essentially a series of time trials to test SFHR's Indy car in real-world conditions, Merryman was assigned Julian as a roommate. On the ride down, Julian explained "roommate rules" to Merryman: "I get the bed next to the air conditioner, and you must be naked when in the room." Upon arriving at their room and after Merryman had unpacked, Julian was standing next to his bed naked for no apparent reason and laughing. Later, Julian encouraged other employees to "ask Scotty about our roommate rules."

19. Later that same trip, on the evening of March 14, 2012, as the team was in the paddock packing up equipment, Julian battered Merryman. As Merryman was on his knees installing mounting brackets to crate the engine, Julian approached Merryman from behind, unzipped his pants, and tapped the back of Merryman's head with his penis. SFHR Employees Nathan O'Rourke, Jeremy Milless, Nick Allen, Robbie Ott, and Mike O'Gara all witnessed this incident and erupted with laughter, relenting only when Merryman rose to his feet, clearly distraught, and verbally threatened Julian to "never do anything like that again."

20. Julian and the employees who witnessed the physical assault on Merryman did not appreciate its severity. None of the witnesses—including particularly Mike O'Gara, who is Team Manager and Julian's superior—ever approached Merryman to apologize or otherwise attempt to correct the situation.

21. Julian's harassment continued. When the team returned to Indianapolis, Julian instructed two SFHR employees who had not witnessed the battery, Laurin Dawes and Danny Klotz, to approach Merryman and ask, "I heard you got mushroomed this weekend?" Dawes and Klotz did as Julian instructed. Upon realizing he had been an unwitting accomplice to Julian's harassment scheme, Dawes apologized to Merryman. Referring specifically to SFHR's management, Dawes told Merryman, "I can't believe they condone this type of behavior."

22. Having long exceeded the breaking point with Julian and feeling he had nowhere else to turn, several days after the incident with Dawes and Klotz, Merryman told Data Acquisition Specialist Mark Albert about Julian's battery, as well as the harassment he had endured over the previous fourteen months. Albert was appalled by Julian's conduct and told Merryman he would talk with Team Manager Mike O'Gara.

23. Mike O'Gara's attempt to address Julian's battery and harassment was counterproductive. Instead of addressing the incident with Merryman personally or otherwise bringing it to the attention of his superiors, Mike O'Gara told Julian about Merryman's complaint, which resulted in Julian speaking with Merryman on his own. Julian suggested Merryman was oversensitive, saying things like, "Are you still upset about that Birmingham thing?" and "Can't a guy have a little fun?"

24. In discussing the situation with Julian, Merryman attempted to work with him, telling Julian that he felt he had been singled out from day one, in part because of his religious beliefs and in part because he refused to participate in some of the team's afterhours activities that went against his beliefs (*e.g.*, attending strip clubs while on the road, etc.). Sensing an opportunity for openness with Julian, Merryman explained that his religious beliefs required him to be true to himself. Yet instead of empathizing with Merryman and at least offering an apology, the harassment continued. On numerous occasions until his eventual termination, Julian used Merryman's moment of openness as yet another opportunity to humiliate and degrade, mockingly telling him, "Be true to yourself, Scott."

25. The events leading to Merryman's termination began in approximately mid-June 2012. After the Milwaukee race (June 12 to 16, 2012), Julian bragged that his van beat everyone home because he drove at speeds in excess of 100 miles per hour. For the next race at Iowa

6

(June 20 to 23, 2012), Merryman found out he was assigned to Julian's van. Uncomfortable with the idea of traveling at such high speeds, Merryman requested to travel in a different van.

26. Julian apparently became aware of Merryman's request shortly thereafter, as he told Merryman he was disciplined for speeding and began to continually remind Merryman that "paybacks are hell." A few weeks later, in Toronto (July 4 to 8, 2012), Merryman was once again assigned to Julian's van, and during the trip Julian sarcastically stated things like, "Mr. Merryman, do you mind if I have a beer on the drive back to the hotel?" and "Sorry for speeding, Mr. Merryman." Later, and this time in a serious tone, Julian told Merryman, "I didn't like getting in trouble" and reminded him once again that "paybacks are hell."

27. Julian followed through on his threat. Less than one week later, on July 11, General Manager Andy O'Gara told Merryman he was terminated. When Merryman asked why, Andy O'Gara was at first non-descript—"We need to go in a different direction"—and then, in a remarkable display of euphemism, explained that Merryman was being terminated because of "chemistry between you and Anton." At no time during this conversation did Andy O'Gara indicate Merryman was being terminated for performance reasons.

## Count I: Sex-Based Discrimination

28. Merryman incorporates Paragraphs 1 to 27 by reference.

29. SFHR unlawfully discriminated against Merryman on the basis of his sex in violation of Title VII.

30. SFHR unlawfully treated Merryman differently than similarly-situated employees of a different sex and/or similarly-situated employees of the same sex who conformed to SFHR's and Julian's perceived sexual stereotypes, while Merryman did not.

31. SFHR's stated reason for terminating Merryman is pretextual.

32. SFHR's actions were undertaken with malice or reckless indifference to Merryman's federally protected rights.

33. Merryman has suffered damages as a result of SFHR's unlawful actions.

### Count II: Religion-Based Discrimination

34. Merryman incorporates Paragraphs 1 to 33 by reference.

35. SFHR unlawfully discriminated against Merryman on the basis of his religion in violation of Title VII.

36. SFHR unlawfully treated Merryman differently than similarly-situated employees outside the protected class.

37. SFHR's stated reason for terminating Merryman is pretextual.

38. SFHR's actions were undertaken with malice or reckless indifference to Merryman's federally protected rights.

39. Merryman has suffered damages as a result of SFHR's unlawful actions.

### Count III: Retaliation for Complaining About Harassment

40. Merryman incorporates Paragraphs 1 to 39 by reference.

41. SFHR terminated Merryman for engaging in statutorily protected activity in violation of Title VII.

42. SFHR treated Merryman less favorably than similarly-situated employees who did not engage in statutorily protected activity.

43. SFHR's stated reason for terminating Merryman is pretextual.

44. SFHR's actions were undertaken with malice or reckless indifference to Merryman's federally protected rights.

45. Merryman has suffered damages as a result of SFHR's unlawful actions.

8

### Count IV: Battery

46. Merryman incorporates Paragraphs 1 to 45 by reference.

47. While acting within the scope of his employment with SFHR, Julian knowingly or intentionally touched Merryman without Merryman's consent in a rude, insolent, or angry manner.

48. Merryman has sustained damages as a result of SFHR's unlawful actions.

### Count V: Intentional Infliction of Emotional Distress

49. Merryman incorporates Paragraphs 1 to 48 by reference.

50. While acting within the scope of his employment with SFHR, Julian engaged in extreme and outrageous conduct that intentionally or recklessly caused severe emotional distress to Merryman.

51. Merryman has sustained damages as a result of SFHR's unlawful actions.

### Count VI: Wrongful Discharge

52. Merryman incorporates Paragraphs 1 to 51 by reference.

53. SFHR wrongfully discharged Merryman for exercising a statutory right or refusing to exercise a statutory duty.

54. Merryman has sustained damages as a result of SFHR's unlawful actions.

### Relief Requested

Wherefore, Plaintiff Scotty Merryman respectfully requests that this Court enter judgment in his favor and provide him the following relief:

1. Front pay in lieu of reinstatement.

2. Compensation, and all unpaid wages and monetary losses suffered as a result of the SFHR's unlawful actions, in an amount that will make him whole.

3. Compensatory, consequential, and punitive damages.

4. Payment of his reasonable attorney fees and costs associated with this action.

5. Pre-judgment and post-judgment interest on all sums recoverable.

6. Any and all other relief to which he is entitled.

Respectfully submitted,

*/s/ Brent R. Borg*

Brent R. Borg, #27415-29
CHURCH CHURCH HITTLE & ANTRIM
10765 Lantern Road, Suite 201
Fishers, IN 46038
317-773-2190
borg@cchalaw.com

## Demand for Jury Trial

Plaintiff Scotty Merryman, by counsel, respectfully requests a trial by jury as to all issues deemed so triable.

Respectfully submitted,

_____
Brent R. Borg