# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SCOTTY MERRYMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-00849-TWP-DKL |
| | ) | |
| SARAH FISHER/HARTMAN RACING LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant Sarah Fisher/Hartman Racing, LLC's ("SFHR") Motion for Summary Judgment ([Filing No. 28](Filing No. 28)). Plaintiff Scotty Merryman ("Mr. Merryman") asserts claims under 42 U.S.C. 2000e *et seq.* ("Title VII") for sex discrimination, religious discrimination, and retaliation, along with state law claims for battery, intentional infliction of emotional distress, and wrongful discharge. A hearing was held on the motion on October 23, 2014. Defendant SFHR was represented by counsel, Jeffrey Scott Beck and Ryann E. Ricchio. Plaintiff Mr. Merryman was represented by counsel, Brent R. Borg and Kelleigh Fagan. The court reporter was David Moxley.

Mr. Merryman has not responded to SFHR's arguments on his state law battery, intentional infliction of emotional distress, and wrongful discharge claims, and only addresses his Title VII claims; therefore, the Court find that the state law claims are waived. Thus, the Court is left to resolve only the motion on Mr. Merryman's Title VII claims. For the reasons set forth below, SFHR's Motion for Summary Judgment is **GRANTED**.

## I. FACTUAL BACKGROUND

The following material facts are not disputed and are viewed in the light most favorable to Mr. Merryman as the non-moving party. Mr. Merryman was an employee of SFHR during 2011 and 2012. SFHR is an auto racing team that competes in the IndyCar Series. The majority of SFHR's employees were male, including all garage/shop employees during the 2011 and 2012 racing seasons. Andy O'Gara ("Andy") served as SFHR's General Manager, and was ultimately responsible for the day-to-day operations of the race team, including overseeing the garage and engineering departments. Mike O'Gara ("Mike") was SFHR's technical director in 2011 and he was promoted to Team Manager for the 2012 racing season. Mike was responsible for organizing timelines for building the racecar, approving time off of work, and race strategy. He reported directly to Andy. Anton Julian ("Mr. Julian") was the SFHR Crew Chief. As Crew Chief, Mr. Julian was responsible for building the car to engineering and manufacturer specifications, including coordination of the car build and assignment of tasks to the mechanics. Mr. Merryman stipulates to the fact that Mr. Julian was not a supervisor, and he had no power to hire, terminate, fail to promote, reassign, or affect a decision causing a significant change in benefits for any SFHR employee. Mr. Julian reported directly to Mike.

Mr. Merryman had a long-standing relationship with Sarah Fisher ("Ms. Fisher"), Andy and Mike. He had previously worked as a tire changer for race weekends in 2008, 2009, and 2010. In early 2011, Andy hired Mr. Merryman as a full-time damper technician. After the 2011 racing season, the team switched damper brands. Andy moved Mr. Merryman from dampers to a front-end mechanic position for the 2012 racing season, and he was replaced by Casey O'Gara. As front-end mechanic, Mr. Merryman was responsible for building and maintaining the front end of the racecar. Mr. Merryman is a non-denominational Christian, and Mr. Julian and SFHR's

management were aware of his religion. SFHR granted Mr. Merryman's requests for time off from work for church activities.

Mr. Merryman alleges that he was subjected to discrimination and harassment based upon his sex and his religion. Specifically, employees would often make derogatory comments and jokes amongst themselves about women and homosexuals. They would also go out drinking and to strip clubs together. Mr. Merryman, however, did not engage in such conduct and "locker room talk" because of his religious beliefs. His allegations of harassment primarily stem from comments and actions directed toward him by Mr. Julian. During the first four months of his employment, Mr. Julian would ask him daily, "how long has it been since you've been laid?" Mr. Julian asked Mr. Merryman about why he quoted so many Bible verses on his Facebook page. When he heard that Mr. Merryman was dating a woman from his church, Mr. Julian made comments that Mr. Merryman was "preying on the weak". Mr. Julian would give Mr. Merryman the "silent treatment" and refuse to answer work-related questions or allow him to borrow his mechanic's book. Mr. Julian also made fun of Mr. Merryman's tattoo of a Christian cross on his arm, but also mocked Mr. Merryman's Indianapolis 500 tattoo. Mr. Julian also would make comments in Mr. Merryman's presence such as "What would Jesus do," "Amen," "Hallelujah," and "Praise the Lord." Mr. Merryman felt he was singled out by Mr. Julian.

Once Mr. Julian became a front end mechanic, Mr. Merryman believes he was subjected to more severe harassing behavior. In March 2012, Mr. Merryman and Mr. Julian had to share a hotel room at a race test in Birmingham, Alabama. Mr. Julian made a statement about "roommate rules" and said that he was to get the bed by the air conditioner, and both he and Mr. Merryman had to be naked. When they got to the hotel room, Mr. Julian went into the room first and pulled his pants and underwear down, and then laughed and pulled them back up. Mr. Merryman did not

report the statement or the incident in the room to anyone in SFHR management. On the final day of the same trip, Mr. Merryman believes that Mr. Julian hit him on the back of the head with his penis. Mr. Merryman had his back turned to Mr. Julian, but turned around to see Mr. Julian zipping up his pants after feeling at tap on the back of his head, and later heard general gossip about the penis incident in the following days. Mr. Merryman discussed the penis incident with two co-workers, Mr. Albert and Mr. Ward, but did not report it to Andy, Mike, or any other SFHR management. Mr. Merryman believes that Mr. Albert discussed the penis incident with Mike, but this is based upon his discussions with Mr. Albert. Sometime later, Mike had a meeting with Mr. Julian in which he told him to sort out his issues with Mr. Merryman. Mr. Merryman also claims he was told by Mr. Ward that he had a conversation with Andy about the incident. The factual allegations regarding the conversations between Mike, Andy, Mr. Ward, Mr. Albert, and Mr. Julian are all based upon what was relayed to Mr. Merryman after their conversations with Mike and Andy.

SFHR claims that Mr. Merryman had a number of performance deficiencies during his employment. At the Seabring International Raceway test held March 7 through 10, 2012, Mr. Merryman failed to properly tighten the left front suspension bolt. He reported the loose nut to Andy and Mike, and apologized for the error. Andy discussed with Mr. Merryman, and later Mike, the serious implications of such an error. At the Barber race test held March 12 through 14, 2012, Mr. Merryman used the wrong bolts on the steering rack and failed to tighten bolts on the steering arm to specification. Mr. Julian reported these errors to Mike. Additionally, there were reports that Mr. Merryman left bolts on the front suspension loose at a race in Detroit in June 2012. There was also a problem at a race in Alabama in April 2012 in which Mr. Merryman improperly installed the racecar's steering wheel, resulting in an offset between 10 and 30 degrees. The driver informed

Mike and Andy of the problem over the radio during the race. Mr. Merryman also failed to properly prepare the driver's hydration system in March and June 2012. And, at a race in July 2012, Mr. Merryman failed to bring the jump battery with the car before a race, and then had an angry outburst in the pit in front of the team's sponsors. Mr. Merryman speculates that he was "set up" by Mr. Julian with respect to the jump battery incident, but does not cite to any evidence to support this claim.

Mr. Merryman was discharged in July 2012 for numerous performance deficiencies. Andy, Mike, and Ms. Fisher met to discuss concerns about Mr. Merryman's errors, attitude, and inability to get along with other team members. Andy and Mike made the decision to terminate his employment, and Ms. Fisher concurred. Andy sent an e-mail to Wink Hartman ("Mr. Hartman"), the other owner of the race team, on July 10, 2012, informing him that he was terminating Mr. Merryman's employment. Andy explained that Mr. Merryman had made "multiple mistakes that we deem unacceptable on the racecar" and has not been prepared. The email also stated that Mr. Merryman could not accept Mr. Julian as an authority figure and "has come to Mikey and I with too much whining and it's just not working." Mr. Merryman acknowledged that he had no reason to believe that Andy did not honestly believe that he had performance issues. Additional facts will be addressed below as necessary.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the

record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

### III. ANALYSIS

**A. Motion to Strike Surreply**

Pending along with the motion for summary judgment is SFHR's motion to partially strike Mr. Merryman's surreply ([Filing No. 41](#)). SFHR requests that the Court strike Sections I and III of Mr. Merryman's surreply, arguing that these sections do not address new evidence in the reply or respond to objections to admissibility, as required by S.D. Ind. Local Rule 56-1(d). Section I of Mr. Merryman's surreply addresses mischaracterization of testimony, not admissibility or any new evidence submitted in the reply. Section III of the surreply, however, addresses SFHR's challenge to evidence presented by Mr. Merryman because it was not based upon personal knowledge, which is a challenge to admissibility under Federal Rule of Evidence 602. Thus, the only portion of Mr. Merryman's surreply that does not comport with Local Rule 56-1(d) is Section

6

I, and therefore the Court finds that this portion should be **STRICKEN**. SFHR's motion to partially strike ([Filing No. 41](#)) is therefore **GRANTED in part** and **DENIED in part**. The Court will not consider Section I of Mr. Merryman's brief in its ruling.

**B.      Hostile Work Environment Discrimination Claim**

Mr. Merryman claims that that SFHR discriminated against him, alleging that Mr. Julian's conduct created a hostile work environment. In order to prevail, Mr. Merryman must show that (1) the work environment was subjectively and objectively offensive; (2) a protected characteristic was the cause of the harassment; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability. *Chaib v. Indiana*, 744 F.3d 974, 985 (7th Cir. 2014). SFHR does not challenge that the work environment was subjectively and objectively offensive, but does argue that Mr. Merryman cannot show that the alleged harassment was "because of" Mr. Merryman's sex, that the conduct was severe or pervasive conduct nor that there is a basis for employer liability.

**1. "Because of" Sex**

Mr. Merryman must first show that the alleged harassment was "because of" his sex for an actionable sexual harassment claim. "Title VII prohibits 'discriminat[ion] . . . because of . . . sex' in the 'terms' or 'conditions' of employment." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79-80 (1998). Workplace harassment is not automatically discrimination "merely because the words used have sexual content or connotations." *Id.* at 80. In instances of same-sex harassment, the inference of sex discrimination can be drawn by showing the harasser is a homosexual, the same-sex harasser uses such "sex specific and derogatory terms . . . as to make it clear that the harasser is motivated by general hostility to the presence" of a certain gender in the workplace, or evidence of treatment of both sexes in the workplace. *Id.* at 79-80.

Neither Mr. Merryman nor Mr. Julian is homosexual. Mr. Merryman argues an alternative theory of discrimination based on sex stereotyping. He cites to *Doe by Doe v. City of Belleville, Ill.*, 119 F.3d 563 (7th Cir. 1997), for the proposition that a plaintiff may rely on evidence that the harasser perceived him as insufficiently masculine as proof that he was harassed because of his sex. However, none of the comments cited by Mr. Merryman related to Mr. Julian's perception of his sexuality or masculinity. Mr. Merryman cites to the fact that he would not go to strip clubs with the other employees of the shop as establishing that Mr. Julian did not perceive him as fitting the stereotypical image of males; however, none of the comments related to Mr. Merryman not going to strip clubs. In addition, Mr. Julian's comments to the effect of "how long has it been since you've been laid" do not necessarily indicate that the comment was made because of his sex or Mr. Julian's perception of Mr. Merryman's masculinity. This is distinguishable from cases in which a man is harassed because "his voice is soft, his physique is slight, his hair is long, or because in some other respect he exhibits his masculinity in a way that does not meet his coworkers' idea of how men are to appear and behave." *Id.* at 581. Thus, Mr. Merryman has not presented sufficient evidence from which a jury could conclude that the harassment was because of his sex.

   2. **Severe or Pervasive Conduct**

Mr. Merryman has also not shown that Mr. Julian's actions amount to severe or pervasive conduct. "Factors in our assessment include the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance." Scruggs v. Garst Seed Co., 587 F.3d 832, 840-41 (7th Cir. 2009). "Offhand comments, isolated incidents, and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment." Id. Mr. Merryman alleges one instance of physical contact and a number of comments from Mr. Julian.

8

Accepting that Mr. Julian tapped Mr. Merryman on the head with his penis (and not his fingers, as Mr. Julian claims), an isolated incident such as this is generally not sufficient to prove severe or pervasive conduct. See, c.f. Hostetler v. Quality Dining, Inc., 218 F.3d 798, 809 (7th Cir. 2000) (The "physical, intimate, and forcible character of the acts at issue" and "attempted sexual assault" were severe enough to support a sexual harassment claim). The act of tapping someone on the back of the head with a penis is clearly offensive and humiliating, but the single incident does not raise to the level of severe or pervasive. "One very severe act of harassment might create a hostile environment . . . but that would be the rare case. In the typical case, it is a combination of severity and frequency that reaches the level of actionable harassment." Patton v. Keystone RV Co., 455 F.3d 812, 816 (7th Cir. 2006).

In addition, the comments cited by Mr. Merryman are more akin to teasing than actionable harassment. "Not every unpleasant workplace is a hostile environment. The 'occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers' would be neither pervasive nor offensive enough to be actionable." Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1013 (7th Cir. 1997) (quoting Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430 (7th Cir. 1995)). While such conduct is inappropriate for the workplace, it may not rise to the level of actionable harassment, considering the environment in which Mr. Merryman worked.

With respect to the alleged harassment based upon Mr. Merryman's religion, this does not rise to the "severe or pervasive" level. Mr. Julian asked Mr. Merryman about Bible verses on his Facebook page, made comments about his tattoo, and generally made fun of Mr. Merryman about being a religious person. "Offhand comments, isolated incidents, and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment," and this assessment must be made from both subjective and objective viewpoints. Passananti v. Cook Cnty., 689 F.3d

655, 667 (7th Cir. 2012). The Court concludes that a reasonable jury would not consider these comments to be objectively severe in nature to constitute harassment on the basis of Mr. Merryman's religion.

### 3. Basis for SFHR Liability

Even if the Court were to find Mr. Julian's act of tapping Mr. Merryman on the back of his head to be severe harassment, Mr. Merryman cannot establish employer liability. Mr. Merryman has conceded that Mr. Julian was not a supervisor, thus he must show that SFHR was negligent in discovering or remedying the harassment.[1] Mr. Merryman must demonstrate that he (1) notified SFHR about the harassment, or (2) the harassment was so pervasive that a jury could infer that SFHR knew about it. Mr. Merryman admitted in his deposition that he did not report the "roommate rules" or "penis incident" to management, and relies upon Andy and Mike being made aware of the incidents through other co-workers as a basis for their knowledge. Mr. Merryman does not cite to any case law showing that this method of "notification" is sufficient for purposes of Title VII. "Generally, we do not consider an employer to be apprised of the harassment 'unless the employee makes a concerted effort to inform the employer that a problem exists.'" *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 506-07 (7th Cir. 2004) (quoting *Silk v. City of Chi.*, 194 F.3d 788, 807 (7th Cir. 1999)). "However, we could charge an employer with constructive notice where the harassment is sufficiently obvious." *Id.*

Mr. Merryman has not presented any evidence that Andy or Mike knew about the specifics of the alleged harassing conduct, either because he informed them or because the alleged

---

[1] Mr. Merryman makes arguments regarding the sufficiency of SFHR's anti-harassment policy; however, an employer's anti-harassment policy is only relevant where the alleged harasser is a supervisor and the employer asserts an *Ellerth* defense to avoid strict liability for the supervisor's harassment. *Shaw v. AutoZone, Inc.*, 180 F.3d 806, 812 (7th Cir. 1999) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764 (7th Cir. 1998)). The *Ellerth* affirmative defense requires proof that an employer exercised reasonable care to prevent and promptly correct any harassing behavior, and the existence of an appropriate anti-harassment policy will often satisfy this requirement. *Id.* Because Mr. Julian is not a supervisor, this defense does not apply.

harassment was sufficiently obvious that SFHR should have been aware of it. Andy and Mike testified in their depositions that they were not aware of the details of the incidents complained of by Mr. Merryman. In his deposition, Andy testified that Mr. Ward had not informed him of any specifics about the incidents, only that Mr. Merryman and Mr. Julian "were not getting along." (Filing No. 28-3, at ECF pp. 84-85.) Mr. Albert testified that he told Mike that there appeared to be a problem between Mr. Merryman and Mr. Julian, but did not any relay specific information. (Filing No. 28-7, at ECF pp. 9-10.) The only evidence cited by Mr. Merryman regarding Andy's and Mike's first-hand observation of alleged harassing behavior refers to the Mr. Julian's comments to Mr. Merryman about "getting laid," which, as will be discussed below, does not rise to the level of actionable harassment. (Filing No. 28-1, at ECF p. 47.) Otherwise, Mr. Merryman relies upon his complaints to co-workers as a basis for arguing that SFHR management knew about the alleged harassment. However, Mr. Merryman may not rely upon Mr. Ward's or Mr. Albert's account of what they said to Andy and Mike because this constitutes hearsay, which cannot form the basis for finding a dispute of material fact at summary judgment.[2] *See* Fed. R. Civ. P. 56(c)(4). "[W]ithout knowledge of an employee's harassing conduct, there is nothing an employer can do beyond the general policies and training to ensure compliance with Title VII." *Schele v. Porter Mem'l Hosp.*, 198 F. Supp. 2d 979, 989 (N.D. Ind. 2001) (citing *Cooke v. Stefani Mgmt. Servs., Inc.*, 250 F.3d 564, 569 (7th Cir. 2001)). "Mere office gossip and banter falls far short of establishing that [an employer] either condoned or licensed sexual harassment, nor would unsubstantiated rumors permit a reasonable person to conclude that such harassment was part of the 'ordinary course of business' [in the workplace]." *Jansen v. Packaging Corp. of Am.*, 123 F.3d

---

[2] Mr. Merryman argues that these conversations fall within the hearsay exception under Fed. R. Civ. P. 801(d)(2)(D) for statements made by an opposing party's employee within the scope of his employment. However, reporting alleged acts of discrimination does not fall within the scope of either Mr. Ward's or Mr. Albert's employment, thus the exception does not apply.

11

490, 549 (7th Cir. 1997). The employee himself has an obligation to report the alleged harassment to his employer. Because Mr. Merryman did not report the alleged harassment to SFHR, his claim fails on this point alone, even if he could prove the other elements of his sexual harassment claim.

Because Mr. Merryman cannot show disputes of material fact as to his *prima facie* case of hostile work environment sexual harassment and harassment based upon his religion, SFHR is entitled to summary judgment on these claims.

**C.    Disparate Treatment Discrimination Claim**

Mr. Merryman next argues that he was terminated because he did not conform to Mr. Julian's perceived sexual stereotypes, and that SFHR should be held liable under the "cat's paw" theory. "The cat's paw theory applies in the employment discrimination context when 'a biased subordinate who lacks decision-making power uses the formal decision maker as a dupe in a deliberate scheme to trigger a discriminatory employment action.'" *Johnson v. Koppers, Inc.*, 726 F.3d 910, 914 (7th Cir. 2013) (quoting *Smith v. Bray*, 681 F.3d 888, 897 (7th Cir. 2012)) (additional quotations and citations omitted). "The cat's paw theory requires both evidence that the biased subordinate actually harbored discriminatory animus against the victim of the subject employment action, and evidence that the biased subordinate's scheme was the proximate cause of the adverse employment action." *Id.*

As discussed above, this theory is problematic because Mr. Merryman has not shown evidence that Mr. Julian harbored discriminatory animus against him on the basis of his gender. Secondly, Mr. Merryman has not shown that Mr. Julian's alleged "set up" or "scheme" was the proximate cause of his termination. He cites to one incident that he believed was a "set up" by Mr. Julian, which was Mr. Merryman's failure to have the jump battery available at a race. However, SFHR cited to a number of other performance deficiencies over the course of the 2012

12

racing season that resulted in his termination in which Mr. Julian was not involved. Thus, it cannot be said that a "scheme" devised by Mr. Julian was the proximate cause of Mr. Merryman's termination, and the discriminatory animus, if any, cannot be attributed to SFHR under the cat's paw theory. Thus, SFHR is entitled to summary judgment on Mr. Merryman's disparate treatment claim.

**D.     Retaliation Claim**

Mr. Merryman also alleges that he was terminated in retaliation for his complaints about harassment by Mr. Julian. In order to prove a retaliation claim under both the direct and indirect methods, Mr. Merryman must show that he engaged in activity protected under Title VII. As discussed above, Mr. Merryman's failure to report the incidents of harassment to SFHR management is fatal to his claims. "It is not sufficient that [an employer] could or even should have known about [an employee's] complaint; [the employer] must have had actual knowledge of the complaints for [its] decisions to be retaliatory." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 668 (7th Cir. 2006) (quoting *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004)). Mr. Merryman has not presented evidence that SFHR had actual knowledge of his complaints about the alleged harassment; he merely speculates that his conversations with co-workers were conveyed to management, and that management was made aware of the specifics of the incidents. In addition, Mr. Merryman points to no evidence that he complained to management about harassment based upon his religion or that management was made aware of this alleged harassment. Because Mr. Merryman has not shown that he engaged in protected activity, his retaliation claim fails.

Mr. Merryman's retaliation claim fails for the additional reason that he cannot show that his alleged complaints were the proximate cause of his termination, which would be relevant under

13

both the direct and indirect methods of proof. As previously discussed, there were numerous performance deficiencies that formed the basis for Mr. Merryman's termination. Mr. Merryman attempts to deny some of the allegations regarding performance issues, and states "on information and belief" that SFHR made them up; however, he provides no other evidence besides his self-serving affidavit to support this theory. ([Filing No. 36-8, at ECF p. 2.](#)) He provides no evidence that the performance issues did not occur, only that he questions the severity of their nature. ([Filing No. 35, at ECF pp. 17-20](#).) On the other hand, Mr. Merryman stated himself that he believed that SFHR honestly believed in the reasons for his termination that were stated in the e-mail from Andy to Mr. Hartman, which mentioned performance deficiencies and personnel issues. Merryman Dep. 288:11-18 ([Filing No. 28-1, at ECF p. 183](#); [Filing No. 28-3, at ECF p. 92](#)). "This circuit adheres to the honest-belief rule: even if the business decision was ill-considered or unreasonable, provided that the decision maker honestly believed the nondiscriminatory reason he gave for the action, pretext does not exist." *Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004). Thus, Mr. Merryman cannot show that his complaints proximately caused his termination, that he was meeting his employer's legitimate employment expectations, or that the reason given for his termination was pretextual. For these additional reasons, Mr. Merryman cannot prove his retaliation claim, and SFHR is entitled to summary judgment.

## IV. <u>CONCLUSION</u>

The Court concludes that Mr. Merryman has not shown that there are disputes of material fact from which a reasonable jury could find that he was harassed or discriminated against on the basis of his gender or religion, nor has he shown that he engaged in protected activity to form the basis of a retaliation claim. For the foregoing reasons, SFHR's Motion for Summary Judgment ([Filing No. 28](#)) is **GRANTED**, and Mr. Merryman's claims are **DISMISSED with prejudice**.

**SO ORDERED.**

Date: 12/3/2014

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Brent R. Borg
CHURCH CHURCH HITTLE & ANTRIM
bborg@cchalaw.com

Kelleigh Fagan
CHURCH CHURCH HITTLE & ANTRIM
kfagan@cchalaw.com

Jeffrey Scott Beck
FAEGRE BAKER DANIELS LLP - Indianapolis
jeffrey.beck@FaegreBD.com

Jenie Van Hampton
FAEGRE BAKER DANIELS LLP - Indianapolis
jenie.vanhampton@faegrebd.com

Ryann E. Ricchio
FAEGRE BAKER DANIELS LLP - Indianapolis
ryann.ricchio@faegrebd.com